ANSTEAD, Judge,
dissenting:
The appellants, Jill Denise Middlemiss and her father, are seeking a new trial of a personal injury action, claiming error by the trial court in making certain comments to the jury.
Under Florida’s no fault law then in effect, Miss Middlemiss was required to prove a permanent injury or medical expenses in excess of $1,000.00, in order to maintain her personal injury claim. Since her medical expenses were less than $1,000.00, her case relied solely on proof of a permanent injury. She presented a doctor who testified that in his opinion she had received a permanent injury, and the appellees presented a doctor who opined that she had not. During the cross-examination of the doctor called by the appellees, the following took place:
Q. Dr. Dickens, do you very often testify in court?
A. I don’t know what you mean by “very often”. I mean, I testified on the average of, oh, maybe two or three times a month.
Q. And do you very often testify for the defense?
A. I imagine I do; that’s right.
MS. ANDERSON: Okay, thank you. I have nothing further.
THE COURT: Members of the jury, I want to inform you, at this time, the *1162 Court appointed Dr. Dickens to examine the plaintiff at the defendant’s motion. The Court appointed Dr. Dickens to examine the plaintiff. Okay, you can step down, Doctor.
Immediately thereafter, the appellants objected to the court’s comments and moved for a mistrial, which was denied by the court, as was a subsequent request that the jury be instructed that no greater weight be given the doctor’s testimony simply because he was court-appointed. The jury found by special interrogatory verdict that Miss Middlemiss had not sustained a permanent injury and was, therefore, not entitled to recover.
In response to appellants’ objection and motion for mistrial, and out of the presence of the jury, the court stated:
THE COURT: Your questioning exceeded the bounds of propriety. When you did, it was necessary for me to establish to this jury that the Court had the confidence in this doctor to appoint him, and that is exactly why I did, and I appointed him. I reposed the confidence of this Court in this doctor, and your questions were intended to slant that. This is the difficulty and that’s why I asked you, because I figured you were going to get into that, and I wanted to head you off. But you persisted in it, and when her persist in that, you are going to pay the consequence.
MS. ANDERSON: If I could continue with my objection. The comment by the Court to the jury that the doctor was' Court appointed was prejudicial to the plaintiff in that it gave the jury the impression that the doctor had a special competence, and a competence and integrity not otherwise appointed to other doctors, such as the plaintiff’s doctor. The question that I asked I have asked in other cases. It has never been objected to. It is not, to the best of my knowledge, error. I did not mention the fact that this doctor was Court appointed, nor did I ask him — he did testify on direct he came here either by appointment of the Court or by the request of the defendants.
THE COURT: That’s right; that’s exactly right, and your questions were calculated to elicit the fact that he testified for the defense, and he was being paid by the defense. You persisted in that questioning, and I wanted the jury to know — I don’t want them to be misled that he is a defendant’s doctor; he is not. In this particular instance, he was appointed by the Court under the rules of practice, under proper application by the defendants to examine the plaintiff under the rules of practice, under the order of this Court to examine, and I want the jury to know that because I don’t want the jury to be misled that he was a minion of the defendants, because he is not.
The record reveals that Dr. Dickens was appointed to examine Miss Middlemiss in an agreed order stipulated to by counsel.
On appeal both sides agree that the standard of conduct by a trial judge is correctly stated in Hamilton v. State, 109 So.2d 422, 424-425 (Fla. 3d DCA 1959):
The dominant position occupied by a judge in the trial of a cause before a jury is such that his remarks or comments, especially as they relate to the proceedings before him, overshadow those of the litigants, witnesses and other court officers. Where such comment expresses or tends to express the judge’s view as to the weight of the evidence, the credibility of a witness, or the guilt of an accused, it thereby destroys the impartiality of the trial to which the litigant or accused is entitled. (Emphasis supplied.)
The appellees contend that the statements made by the trial court, in the presence of the jury, were correct and did not deviate from the standard set out above. I cannot agree.
The comments by the court must be considered in the light of the court’s own statements in explanation made outside the jury’s presence. In most cases, this court is limited to a consideration of the “cold record” which does not always reveal the actual atmosphere in the courtroom. Limited by that record it is often difficult to evalu *1163 ate allegedly prejudicial comments made during the course of a jury trial. Here, we have no such problem. The trial court clearly stated that his purpose was to let the jury know that the court had reposed its confidence in this doctor and that the doctor was not biased in favor of the appel-lees. And as evidence of the prejudicial effect on the appellant the court even categorized his remarks as a “consequence” to be suffered because of counsel’s cross-examination concerning the doctor’s previous court appearances. I can only assume that the trial court accomplished his stated purpose.
The statements were not justified by appellants’ counsel’s conduct. There was nothing improper in the cross-examination of the doctor. Indeed, there was no objection made by appellees to the questions asked about the doctor’s previous court appearances. Certainly both sides were entitled to wide latitude in cross-examining both medical witnesses to discover any possible bias or prejudice since the issue of permanent injury largely rested on the credibility of their testimony.
While the trial court’s comments were technically accurate in that Dr. Dickens was court-appointed, there is nothing in the record to indicate that the appointment was made upon an independent determination by the court of the qualifications of Dr. Dickens. To the contrary, the appointment was made by agreement of the parties. However, regardless of the circumstances surrounding the appointment, it is up to the parties to elicit those circumstances. For instance, it would have been entirely proper for the appellees to establish the fact that appellants’ counsel had agreed to Dr. Dickens’ examination of Miss Middlemiss. But when the trial court takes it upon itself to express “confidence” in the witness as a “consequence” of attempted impeachment, I believe it constitutes a comment by the court on the credibility of the witness. And, no matter what the circumstances may have been in the selection of the doctor to examine the plaintiff, the court’s role in his selection does not entitle the doctor’s testimony to any greater weight or credibility than that of other expert medical witnesses. An instruction to this effect would probably have mitigated the consequences of the harmful comments, but no such instruction was given.
The issue of permanent injury was at all times a crucial one, and a necessary predicate to appellants’ claim. Since there were only two medical experts to testify, that issue boiled down to which of the two medical opinions the jury would accept. Accordingly, the credibility of the doctors became crucial, and it is impossible for me to conclude that the trial court’s expression of confidence in Dr. Dickens did not constitute prejudicial error.